EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Luis Miguel Ramos Martínez y otros<br><br>Recurridos<br><br>v.<br><br>Liberty de Puerto Rico y otros<br><br>Peticionarios | Certiorari<br><br>2026 TSPR 91<br><br>218 DPR ___ |
| --- | --- |

Número del Caso:  CC-2025-0720


Fecha:  13 de agosto de 2026


Tribunal de Apelaciones:

    Panel III


Representante legal de la parte peticionaria:

    Lcda. Damaris Román Collazo


Representantes legales de la parte recurrida:

    Lcdo. Juan M. Martínez Nevarez
    Lcda. María Teresa Bustelo García



Materia: Procedimiento Civil – Alcance de Rivera et al. v. Arcos Dorados et al., 212 DPR 194 (2023), para la exclusión de prueba pericial.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Luis Miguel Ramos Martínez y otros<br><br>Recurridos<br><br>v.<br><br>Liberty de Puerto Rico y otros<br><br>Peticionarios | CC-2025-0720 |
|---|---|

**El Juez Asociado Señor Candelario López emitió la Opinión del Tribunal.**

En San Juan, Puerto Rico, a 13 de agosto de 2026.

En esta ocasión nos corresponde evaluar si el Tribunal de Apelaciones (TA) abusó de su discreción al revocar la exclusión de un informe pericial presentado tardíamente por la Autoridad de Energía Eléctrica de Puerto Rico (AEE), sin que mediara solicitud de prórroga ni justa causa para ello. En específico, estamos llamados a resolver si el foro apelativo intermedio incidió al adjudicar *motu proprio* la esencialidad del informe en cuestión y concluir que su eliminación era análoga a la medida extrema de desestimación según lo resuelto en *Rivera et al. v. Arcos Dorados et al.,* *infra*. Por considerar que el TA erró al revocar el dictamen del Tribunal de Primera Instancia (TPI), adelantamos que procede revocar la *Sentencia* recurrida y devolver el caso al tribunal de instancia para que continúe los procedimientos conforme a los fundamentos esbozados a continuación.

Además, aprovechamos esta ocasión para clarificar el alcance de lo resuelto en *Rivera et al. v. Arcos Dorados et al., infra*, a los efectos de proveer que la determinación de

esencialidad no es un automatismo activado ante cualquier exclusión pericial, sino que, más bien, debe establecerse a partir del tracto procesal en cada caso. Es decir, para concluir que la exclusión de un perito es análoga a privar a la parte afectada de su día en corte, es indispensable evaluar las circunstancias específicas que surgen del expediente, incluyendo quién carga con el peso de la prueba, las alegaciones de las partes, la esencialidad de la evidencia pericial y el estado actual de los procedimientos. Veamos.

## I

Los acontecimientos que originan este recurso surgen ante una explosión frente a una panadería en el municipio de Caguas. En la madrugada del 2 de abril de 2021, se escuchó una detonación en la marginal donde está ubicado este comercio, causando que el tendido eléctrico cayera al nivel de vehículos pesados. Acto seguido, un camión se enredó con los cables y el Sr. Luis Miguel Ramos Martínez (señor Ramos Martínez) fue golpeado en la espalda por estos mientras vendía billetes de lotería.

A raíz de este suceso, el 1 de julio de 2023, el señor Ramos Martínez, la Sra. Zoraida Claudio Rodríguez y la Sociedad Legal de Bienes Gananciales compuesta por ambos (en conjunto, matrimonio Ramos Claudio o demandantes) presentaron una *Demanda* sobre daños y perjuicios en contra de la AEE, Liberty Communications of Puerto Rico, LLC (Liberty) y Chubb Insurance Company (Chubb), entre otros. En

su petitorio, alegaron que, como consecuencia de la explosión, el señor Ramos Martínez recibió fuertes latigazos en la espalda que provocaron su caída al pavimento. Sostuvieron que, debido al bajo tendido de unos cables pertenecientes a AT&T[1] y a la AEE, un camión que transitaba por el área se enredó con ellos y provocó que se partieran, azotaran y tumbaran al señor Ramos Martínez. Ante ello, argumentaron que AT&T y la AEE eran responsables por el incidente.[2] Por tanto, el matrimonio Ramos Claudio reclamó indemnización por las lesiones corporales recibidas por el señor Ramos Martínez, las angustias y sufrimientos mentales experimentados, y los gastos incurridos como consecuencia del accidente.[3]

El 23 y el 27 de octubre de 2023, Liberty y Chubb (en conjunto, parte peticionaria o peticionarios) notificaron sus alegaciones responsivas, respectivamente. Además, el 27 de octubre de 2023 presentaron una *Demanda Contra Coparte* en conjunto. Mediante esta, arguyeron que la explosión en cuestión provino de un transformador de la AEE, por lo que, de ser ciertas las alegaciones, la AEE sería la única responsable de los daños ocasionados al señor Ramos Martínez. A su vez, plantearon que, en el supuesto de hallarse negligencia en su contra, la AEE debería responder por la

---

[1] Debido a que AT&T fue adquirida por Liberty, el matrimonio Ramos Claudio presentó la *Demanda* en contra de esta.

[2] Los demandantes alegaron que, según la investigación realizada por miembros de la Policía de Puerto Rico, entre la cablería tirada en el pavimento se pudieron observar cables con el nombre de AT&T, y además, que dada la explosión realizada, se desprendía que eran cables de la AEE.

[3] A saber, solicitaron $120,000 por los daños recibidos por el señor Ramos Martínez y $25,000 por los daños sufridos por su esposa y la Sociedad Legal de Gananciales compuesta por ambos.

totalidad de cualquier pago o indemnización que, en su momento, debiese cubrir. Posteriormente, el 5 de febrero de 2024, la AEE contestó ambos pliegos instados en su contra.

Por su parte, el 7 de febrero de 2024 el TPI emitió una *Orden* mediante la cual ordenó a las partes continuar con el descubrimiento de prueba y cumplir con la Regla 37.1 de Procedimiento Civil, 32 LPRA AP. V, R. 37.1. Además, señaló una conferencia inicial para el 30 de abril de 2024, y apercibió a las partes que debían someter el *Informe para el manejo del caso* cinco días previos a la vista.

Una vez celebrada la conferencia inicial en la fecha pautada, el TPI concedió a las partes cuarenta y cinco días para someter el plan de trabajo de las deposiciones que realizarían. **En lo pertinente a la contratación de peritos, le otorgó al matrimonio Ramos Claudio este mismo término para informar si iba a contratar un perito, y treinta días a partir de su vencimiento para que la AEE hiciera lo mismo.**[4]

Luego, el 4 de junio de 2024, el TPI concedió diez días a las partes para informar el itinerario para la toma de deposiciones, so pena de sanciones. En cumplimiento de lo ordenado, **el 12 de junio de 2024 las partes presentaron el calendario de descubrimiento de prueba e indicaron que, de contratarse un perito, presentarían los informes periciales**

---

[4] Surge de la *Minuta* de la conferencia inicial que el TPI expresó lo siguiente en cuanto a la contratación de peritos:

> También debe informar la parte demandada si contratarán perito. De haber perito deben incluir la fecha de la toma [de] deposiciones. A partir de [esta] fecha se concederá 30 días para la transcripción y a la parte codemandada para que identifique si va [a] contrata[r] perito.

**en o antes del 8 de agosto y 9 de septiembre de 2024, respectivamente.** De este modo, el 13 de junio de 2024 el TPI señaló que el descubrimiento de prueba culminaría el 30 de diciembre de 2024.

Así las cosas, el 3 de septiembre de 2024 la AEE presentó una moción intitulada *Al Expediente Judicial* en la cual, entre otras cosas, **indicó que el matrimonio Ramos Claudio no había informado si iba a presentar o renunciar al uso de prueba pericial para probar sus alegaciones, por lo que sostuvo que no estaba en posición para determinar si utilizaría evidencia pericial en el caso de epígrafe.**[5] Luego, el 9 de septiembre de 2024, el TPI apercibió a las partes que debían cumplir con la Regla 34.1 de Procedimiento Civil, *supra*, so pena de sanciones. Al día siguiente, la AEE presentó una moción mediante la cual manifestó que la fecha propuesta por los demandantes para notificar su informe pericial había transcurrido sin que lo presentaran, y siendo esto así, informó que tampoco iba a contratar un perito.[6] En

---

[5] En específico, la AEE expresó lo siguiente:

> La parte demandante no ha notificado el nombre, *curriculum vitae*, ni informe de su perito como tampoco ha indicado si habrá de utilizar o renunciar al uso de prueba pericial para probar sus alegaciones. En conversación con el abogado de la parte demandante, quedó en proveer la información a la brevedad posible.
>
> **En virtud de lo anterior, la AEE no está en posición de determinar si habrá o no de utilizar prueba pericial en el caso de epígrafe, por lo cual, el cumplimiento con la fecha límite para notificar su prueba pericial – el 9 de septiembre de 2024 – está en suspenso […] hasta tanto la parte demandante nos indique cómo procederá en cuanto a este particular.** (Negrillas suplidas).

[6] En su *Moción Informativa sobre el Descubrimiento de Prueba*, la AEE sostuvo que:

> 2. Expirado el término de la parte demandante para notificar su prueba pericial, se informa que esta no ha anunciado un perito y mucho menos notificado su informe pericial.

otras palabras, **la AEE renunció a su derecho a presentar prueba pericial porque los demandantes no iban a utilizar un informe pericial para probar sus alegaciones.**

Por su parte, ese mismo día, el matrimonio Ramos Claudio informó que contrataría los servicios de un perito que evaluaría al señor Ramos Martínez y rendiría el informe pericial correspondiente. Ante ello, el foro primario se dio por enterado y reiteró que el descubrimiento de prueba culminaba el 30 de diciembre de 2024.

Sin embargo, el 13 de septiembre de 2024 la parte peticionaria presentó una *Moción Informativa y en Solicitud de Reconsideración*. En desacuerdo, argumentó que los demandantes no presentaron su informe pericial en o antes del 8 de agosto de 2024 como se había estipulado previamente. Además, indicó que estos tampoco solicitaron una prórroga a esos fines, ni acreditaron justa causa para incumplir con el término acordado. Por consiguiente, planteó que los demandantes habían renunciado a su derecho a presentar prueba pericial y sostuvo que permitir la presentación tardía de esta evidencia causaría perjuicios a las demás partes.[7] A saber, indicó que las deposiciones ya habían sido calendarizadas para el mes de octubre y no tendrían tiempo

---

3. Siendo ello así, y no teniendo la parte demandante prueba pericial para probar sus alegaciones, se informa que las partes codemandadas no presentarán prueba pericial.

[7] En específico, la parte peticionaria expresó en su escrito que "[d]e sus propias expresiones y escritos surge que a la fecha de radicación de la moción de 10 de septiembre, ni siquiera han gestionado cita con el perito, por lo cual las demandadas quedamos a merced de que el demandante cumpla cuando quiera, con el perjuicio que ello causa al descubrimiento de prueba que los demandados debemos realizar."

suficiente para preparar un informe pericial de refutación. Por tanto, los peticionarios solicitaron al TPI que reconsiderara su determinación y no permitiera la presentación de la prueba pericial tardía.

Atendida esta solicitud, el 19 de septiembre de 2024 el TPI emitió una *Orden* en la cual le impuso al matrimonio Ramos Claudio una sanción de $500 por incumplir con el itinerario del descubrimiento de prueba y las órdenes del Tribunal. Asimismo, puntualizó que este tendría hasta el 6 de diciembre de 2024 para notificarle a las partes el informe pericial, so pena de ser excluido como evidencia, extendió el descubrimiento de prueba para el 28 de febrero de 2025 y enfatizó que no habría más prórrogas. No obstante, en respuesta a la determinación del TPI, el 25 de septiembre de 2024 el matrimonio Ramos Claudio solicitó reconsideración de la sanción impuesta. Indicó que, tras reevaluar la necesidad y la pertinencia de un perito, determinó que este no era necesario para probar su caso y solicitó al TPI que eliminara la sanción impuesta.

Al día siguiente, el foro primario dejó sin efecto la sanción y reestableció la fecha del 30 de diciembre de 2024 para culminar el descubrimiento de prueba. Sin embargo, luego de ciertos trámites procesales,[8] el 14 de marzo de 2025 el

---

[8] A petición de la AEE, el 7 de enero de 2025, el TPI extendió el descubrimiento de prueba para el 28 de febrero de 2025. En su solicitud, la AEE manifestó que el calendario de deposiciones fue modificado con el consentimiento de las partes, toda vez que la AEE se había quedado sin presupuesto para cubrir los servicios de su representación legal. Indicó que tan pronto se atendiera la asignación de fondos pendientes, se reprogramarían las deposiciones.

Posteriormente, esta vez a solicitud de los demandantes, el TPI volvió a extender el descubrimiento de prueba hasta el 30 de junio de

TPI extendió el descubrimiento de prueba hasta el 30 de junio de 2025 y expresó que no concedería más prórrogas.

De esta manera, el 25 de marzo de 2025 la AEE presentó una *Moción Informativa y en Solicitud de Término* informando que las partes se encontraban en proceso de coordinar el calendario de deposiciones y que la primera fecha disponible para todos era el 3 de junio de 2025. Por otro lado, anunció que contrataría los servicios de un ingeniero para llevar a cabo una evaluación pericial y rendir el informe correspondiente. Así pues, **solicitó al foro primario que concediera un término hasta el 30 de mayo de 2025 para notificar a las partes el informe pericial de su perito.**[9] En atención a ello, el 31 de marzo de 2025 el TPI extendió el descubrimiento de prueba hasta el 29 de agosto de 2025 y volvió a apercibir a las partes que no concedería más prórrogas.

Así las cosas, el 17 de junio de 2025, **dieciocho días después de la fecha solicitada**, la AEE informó al tribunal de instancia que había notificado a las partes el informe preparado por su perito. En respuesta, el día siguiente el matrimonio Ramos Claudio y los peticionarios presentaron una *Moción Conjunta en Oposición a Prueba Pericial*. Mediante esta, se unieron para solicitar al TPI que excluyera la

---

2025. Según el matrimonio Ramos Claudio, el descubrimiento de prueba se había detenido porque las fechas que informó la AEE para la toma de deposiciones no eran hábiles.

[9] **La AEE se limitó a informar haber contratado los servicios del Ing. Víctor M. Ruiz Pérez para realizar una inspección del lugar de los hechos y evaluar los documentos notificados, con el fin de emitir un informe pericial en o antes del 30 de mayo de 2025.**

prueba pericial presentada tardíamente por la AEE. En concreto, **señalaron que la AEE solicitó hasta el 30 de mayo de 2025 para rendir este informe, pero terminó remitiéndolo a las partes el 17 de junio siguiente, sin que mediara solicitud de prórroga ni evidenciara justa causa para ello.**[10] Plantearon que, dado que se trataba de asuntos altamente especializados, la presentación tardía del informe los colocaba en desventaja al no contar con el tiempo suficiente en el periodo de descubrimiento de prueba para identificar peritos de refutación en la materia. Además, destacaron que, a pesar de que las partes habían acordado presentar la prueba pericial antes de iniciar la toma de deposiciones, la primera deposición se llevó a cabo el 3 de junio de 2025 sin que el informe pericial fuera emitido. Ante ello, puntualizaron que la AEE se abrogó el derecho de extender el término para presentar prueba pericial sin contar con la debida autorización del foro primario.[11]

El 20 de junio de 2025 **el TPI concedió tres días a la AEE para que expusiera su posición al respecto, pero esta no compareció.** Así, el 26 de junio de 2025 el matrimonio Ramos

---

[10] El matrimonio Ramos Claudio y los peticionarios indicaron en su moción que "**[v]encido el término, sin previa solicitud de prórroga ni evidenciar justa causa para ello,** no fue hasta altas horas de la noche de ayer que AEE remite el informe del perito, que contrató, según representó al honorable tribunal en su moción, desde el mes de marzo. Pero más aún, al examinar el informe, surge que la fecha del mismo es el 17 de junio de 2025, es decir, **se preparó el informe ya vencido el término, sin solicitar autorización del tribunal a esos fines, el mismo día en que se notificó fuera de horas laborables**". (Negrillas suplidas).

[11] En específico, las partes sostuvieron que "**la AEE se ha abrogado la autoridad para extenderse el término para presentar prueba pericial, sin solicitar permiso del foro,** en abierto incumplimiento con la orden emitida, y cuando lo hace, se limita a presentar una moción al expediente judicial […], sin siquiera cumplir con acreditar justa causa, pedir excusas o dar explicaciones". (Negrillas suplidas).

Claudio y los peticionarios solicitaron que se diera por sometida la solicitud de eliminación de prueba pericial tardía sin oposición de la AEE. Sin embargo, el día siguiente la AEE presentó una *Moción en Solicitud de Prórroga* hasta el 30 de junio de 2025. Alegó que su incomparecencia dentro del término otorgado se debió a que la fecha límite no fue debidamente registrada en su calendario y a que, durante ese periodo, tuvo que atender asuntos urgentes que requirieron atención prioritaria. Además, sostuvo que en nada afectaría el trámite oportuno del caso, debido a que el descubrimiento de prueba se encontraba paralizado por situaciones de salud de la representación legal del matrimonio Ramos Claudio, y que aún restaban dos deposiciones por calendarizar debido a la disponibilidad de los testigos.

Evaluados los escritos de ambas partes, el 30 de junio de 2025 el TPI denegó la solicitud de prórroga presentada por la AEE, y declaró *Ha Lugar* la moción presentada por el matrimonio Ramos Claudio y la parte peticionaria. En consecuencia, resolvió que la AEE no podía presentar su prueba pericial por informarla tardíamente.

A pesar de ello, el 30 de junio de 2025 la AEE presentó una *Réplica en Oposición a la Moción Conjunta de Exclusión de Prueba Pericial*. En extrema síntesis, **reconoció haber notificado el informe pericial fuera de término y no haber presentado una moción formal de prórroga ante el Tribunal.** No obstante, alegó haber notificado a las demás partes que su perito había solicitado días adicionales para completar

su informe, y que estas no se opusieron. Por consiguiente, argumentó que el alegado perjuicio era infundado y la solicitud de exclusión de su informe pericial era irrazonable.

Inconformes, ese mismo día el matrimonio Ramos Claudio y los peticionarios solicitaron que se diera por no presentada la réplica de la AEE, tras esbozar las instancias en las que la AEE había incumplido con los términos dispuestos por el tribunal de instancia. Ante ello, el TPI emitió una *Orden* en la que determinó que el escrito de la AEE fue sometido fuera del término concedido y que ya había resuelto el asunto.

En desacuerdo, el 14 de julio de 2025, la AEE solicitó reconsideración del dictamen por entender que la exclusión de la prueba pericial en cuestión vulneraría su derecho a una defensa adecuada. Además, catalogó esta exclusión como una sanción severa, desproporcionada e injustificada puesto que, a su juicio, el TPI eliminó la prueba pericial "sin que mediara apercibimiento previo, sin la celebración de vista alguna, y sin que se ofreciera a esta parte la oportunidad de exponer fundamentadamente sus argumentos en oposición a la exclusión". Por tanto, argumentó que no hubo un apercibimiento claro ni suficiente que justificara la exclusión de su prueba pericial. Asimismo, alegó que, como notificó a las demás partes que el perito requería unos días adicionales para emitir su informe, existió un acuerdo informal conforme a la Regla 34.1 de Procedimiento Civil,

*supra*. De igual modo, argumentó que no existía perjuicio real, pues las partes conocían desde marzo de 2025 que la AEE había contratado un perito y que este prepararía un informe técnico. No obstante, el TPI proveyó *No Ha Lugar*.

Denegada la solicitud de reconsideración, el 18 de agosto de 2025, la AEE presentó un recurso de *Certiorari* ante el tribunal apelativo intermedio. Sostuvo que el foro primario abusó de su discreción al ordenar la exclusión total de la prueba pericial anunciada y notificada por esta, sin mediar apercibimiento previo, sanciones menos severas y sin que existieran incumplimientos reiterados, dilaciones injustificadas o un perjuicio real e insubsanable que justificara la medida.

El 19 de septiembre de 2025, el TA notificó una *Sentencia* en la cual expidió el recurso y revocó el dictamen recurrido. Sostuvo que la exclusión decretada fue una sanción desproporcionada y contraria a la política pública de permitir un descubrimiento de prueba amplio y liberal. En específico, el TA razonó de la siguiente manera:

> En el caso de autos, el TPI erró al excluir de manera definitiva la prueba pericial anunciada por la AEE. Si bien es cierto que el informe pericial fue notificado el 17 de junio de 2025 y no dentro del término inicialmente dispuesto, también lo es que el proceso de descubrimiento de prueba culminaba el 29 de agosto de 2025, y que la conferencia con antelación a juicio fue señalada para el 2 de octubre de 2025. Esto significa que, al momento de notificarse el informe, todavía restaban más de dos meses para que las partes pudieran diligenciar la deposición del perito y completar cualquier gestión relacionada.

Además, la exclusión decretada se produjo sin apercibimiento previo, sin mediar incumplimientos reiterados ni dilaciones injustificadas atribuibles a la AEE. Por el contrario, tan pronto se señaló la ausencia del informe, esta parte se comunicó con su perito, quien requirió unos días adicionales para completar la redacción. Esta situación fue notificada a la representación legal de las demás partes, quienes en ese momento no plantearon reparos ni anticiparon objeciones. Más aún, al momento de la exclusión todavía quedaban diligencias pendientes de recalendarizar, incluyendo la deposición del propio señor Ramos [Martínez], que tuvo que ser pospuesta por razones personales. Todo ello demuestra que el proceso de descubrimiento se encontraba aún en curso y que no existía un perjuicio real ni insubsanable que justificara la medida adoptada.

En vista de lo anterior, el foro apelativo intermedio indicó que el tribunal de instancia debió considerar sanciones menos severas, en lugar de la exclusión absoluta de la prueba pericial en cuestión. Así, sostuvo que, cónsono con lo resuelto en *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023), al ordenar la exclusión de un perito esencial, el TPI privó a la AEE de presentar un elemento central de su defensa, constituyendo así una violación a su debido proceso de ley.

Inconforme, el 20 de octubre de 2025, la parte peticionaria presentó el recurso de epígrafe y esbozó el siguiente señalamiento de error:

Incidió el Honorable Tribunal de Apelaciones, al revocar la resolución mediante la cual el TPI eliminó a la AEE la prueba pericial de negligencia que produjo tardíamente, sin justa causa de tipo alguno, sin haber solicitado prórroga, y siendo prueba que desde los inicios del caso dejó saber que no le era esencial, sino que su uso ser[í]a contingente a que la necesitara para refutar prueba pericial de la parte demandante, quien renunció a presentar prueba de negligencia, y sin que la AEE en momento alguno explicara al TPI la razón por la

cual dicha prueba le es alegadamente esencial, por lo cual la Sentencia del foro apelativo se basa en asuntos no discutidos ante el foro inferior.

Examinado el recurso, el 30 de enero de 2026 expedimos el auto solicitado. Ante este cuadro fáctico, y habiendo evaluado los alegatos de las partes, procedemos a resolver.

## II

### A. Descubrimiento de Prueba

Sabido es que las normas de descubrimiento de prueba persiguen el propósito de: (1) precisar los asuntos en controversia; (2) obtener evidencia para ser utilizada en el juicio; (3) evitar las sorpresas en el juicio; (4) facilitar la búsqueda de la verdad; y (5) perpetuar evidencia. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico Derecho Procesal Civil*, 6ª. Ed., San Juan, Ed. LexisNexis, 2017, págs. 333-334. De este modo, su finalidad es permitir que las partes puedan prepararse para el juicio, teniendo la oportunidad de obtener la evidencia necesaria para evaluar y resolver las controversias del caso. *Rivera y otros v. Bco. Popular*, 152 DPR 140, 152 (2000).

En aras de promover la preparación de las partes, esta Curia ha reiterado una y otra vez que el descubrimiento de prueba debe ser uno amplio y liberal. *Consejo de Titulares v. Triple-S*, 2025 TSPR 82, 216 DPR ___ (2025); *Rivera et al. v. Arcos Dorados et al.*, *supra*, pág. 203. Sin embargo, la liberalidad otorgada a las partes durante el proceso de descubrimiento de prueba no es absoluta, ya que el principio

rector de nuestro ordenamiento procesal civil es la solución justa, rápida y económica de los casos. Véase Regla 1 de Procedimiento Civil, *supra*. Por tanto, existen ciertas salvaguardas para que todo litigante que pretenda emplear los métodos de descubrimiento de prueba lo haga diligentemente, y así, evitar que el descubrimiento se convierta en un fin por sí mismo.

### i. Discreción judicial a tribunales de instancia en el manejo de casos

En atención a ello, hemos reconocido que los foros de primera instancia tienen amplia discreción para regular el descubrimiento de prueba. *Rivera et al. v. Arcos Dorados et al.*, *supra*, págs. 203-204. A saber, el tribunal está obligado a cumplir con la máxima de llevar a cabo un proceso justo entre las partes, ejerciendo sus facultades de supervisión mediante los mecanismos particulares de descubrimiento y el poder para sancionar a las partes que no cumplan con la diligencia que este proceso amerita. Regla 34.3 de Procedimiento Civil, *supra*. Así, al limitar el descubrimiento de prueba, los tribunales tienen que hacer un balance entre su amplia discreción para regularlo y su obligación de garantizar una solución justa, rápida y económica. *Rivera et al. v. Arcos Dorados et al.*, *supra*, pág. 204.

Reconocida la discreción judicial que tienen los foros primarios en el manejo de los procedimientos celebrados ante sí, hemos descrito la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para

llegar a una conclusión justiciera." *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657-658 (1997). De este modo, la conclusión aludida tiene que estar avalada por el estado de derecho aplicable a la cuestión planteada, constituyendo así la razonabilidad de la sana discreción judicial. Íd., pág. 658. Así pues, el ejercicio de este discernimiento implica que los tribunales no pueden actuar en abstracción del derecho. *Rivera et al. v. Arcos Dorados et al.*, *supra*, pág. 210. De lo contrario, el tribunal abusa de su discreción cuando el juez:

> [n]o toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; […] sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste[;] o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.
>
> Íd., págs. 210-211 citando a *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013).

De este modo, si bien es cierto que las determinaciones realizadas por los foros primarios ameritan deferencia, hemos resuelto que los foros apelativos pueden interferir en aquellas situaciones donde sea socavada la razonabilidad que legitima la discreción judicial. A saber, los foros apelativos debemos interferir en aquellas situaciones en que se demuestre que el tribunal de instancia: (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho

sustantivo. *Consejo de Titulares v. Triple-S*, *supra*; *Rivera et al. v. Arcos Dorados et al.*, *supra*, pág. 210.

### ii.   Sanciones en el descubrimiento de prueba

En armonía con el derecho que antecede, nuestros tribunales han tenido la facultad de imponer sanciones contra aquellas partes litigantes que incumplan con el descubrimiento de prueba desde principios del siglo XX. *HRS Erase v. CMT*, 205 DPR 689, 699-700 (2020) citando la Regla 37(d) de Enjuiciamiento Civil para las Cortes de Puerto Rico de 1943, 32 LPRA Ap. I (derogadas 1958). En lo pertinente, una sanción es una pena que "el derecho procesal establece para obligar al respeto de la autoridad o de las normas que rigen el proceso", cuyo fin es vindicar los pronunciamientos de los tribunales. Hernández Colón, *op. cit.*, pág. 245.

Entre las múltiples fuentes de derecho que facultan a los tribunales para imponer sanciones, la Regla 34.3(b) de Procedimiento Civil, *supra*, otorga al juzgador discreción para sancionar el incumplimiento de un mandato judicial que permita el descubrimiento de prueba. A saber, su tercer inciso dispone lo siguiente:

> Si una parte [...] deja de cumplir una orden para llevar a cabo o permitir el descubrimiento de prueba [...], el tribunal podrá dictar, con relación a la negativa, todas aquellas órdenes que sean justas; entre ellas las siguientes:
>
> […]
>
> (2) Una orden para impedir a la parte que incumpla que sostenga o se oponga a determinadas reclamaciones o defensas, **o para prohibirle la presentación de determinada materia en evidencia.**

[…]

(6) Una orden, bajo las condiciones que estime justas, para imponer a cualquier parte […] una **sanción económica** como resultado de sus actuaciones.

(Negrillas suplidas).

De igual manera, la Regla 37.3 (c) de Procedimiento Civil, *supra*, establece que "[l]os términos y los señalamientos fijados en la orden de calendarización serán de estricto cumplimiento, sujeto a la sanción establecida en la Regla 37.7". Esto significa que las Reglas de Procedimiento Civil otorgan al adjudicador la discreción para imponer todo tipo de sanciones, incluyendo económicas, eliminación de evidencia, y hasta la desestimación de la causa de acción con perjuicio, también conocida como la pena de muerte procesal. Hernández Colón, *op. cit.*, pág. 250. Así, teniendo la facultad de imponer sanciones drásticas a toda parte que incumpla los parámetros de un descubrimiento de prueba, hemos sido enfáticos en que estas medidas no deben utilizarse de forma liviana. *HRS Erase v. CMT*, *supra*, pág. 700.

En lo pertinente a la exclusión o eliminación de evidencia, en *Valentín v. Mun. de Añasco*, 145 DPR 887, 894 (1998), esta Curia analizó la derogada Regla 34.2(b)(2) de las Reglas de Procedimiento Civil de 1979, 32 LPRA Ap. III, R. 34.2(b)(2), la cual es análoga a la Regla 34.3(b) de Procedimiento Civil, *supra*, vigente. En aquella ocasión, reconocimos la facultad que tiene un tribunal de instancia para prohibir la presentación de cierta evidencia cuando la

parte que interese presentarla incumpla órdenes del tribunal. Indicamos que para proceder con esta sanción, es requisito que: 1) el tribunal emita una orden con antelación para llevar a cabo o permitir descubrimiento de prueba; y 2) que la parte interesada en presentar la prueba incumpla con esta. Íd., pág. 894. En específico, expresamos que "la medida severa de excluir del juicio el testimonio de un testigo crucial, que es análoga a la medida extrema de la desestimación, sólo debe usarse en circunstancias excepcionales, en casos en los cuales la conducta de la parte sancionada ha sido contumaz o de mala fe". Íd., pág. 895. Además, también reiteramos que este tipo de sanciones no son favorecidas judicialmente y solo se justifican cuando se obra de forma intencional o cuando no haya duda alguna de la irresponsabilidad o contumacia de la parte a la que se le impone. Íd. Posteriormente, en *Rivera et al. v. Arcos Dorados et al.*, *supra*, aplicamos el análisis realizado en *Valentín v. Mun. de Añasco*, *supra*, en el contexto de la exclusión de un perito esencial.

## B. Exclusión de prueba pericial

La figura del perito ha sido descrita como una persona que, a través de la educación o experiencia, ha desarrollado un conocimiento o destreza sobre una materia de manera que puede formar una opinión que sirva de ayuda al juzgador. *Black's Law Dictionary*, 12th ed., Minn., Thomson West, 2024, pág. 722. (Traducción nuestra). Es decir, el perito es "la persona entendida, el individuo competente, idóneo, por tener

unas determinadas aptitudes y conocimientos, por poseer una adecuada capacidad". *S.L.G. Font Bardón v. Mini-Warehouse*, 179 DPR 322, 338 (2010) citando a *San Lorenzo Trad., Inc. v. Hernández*, 114 DPR 704, 709 (1983). En ese sentido, "[c]omo cualquier otro testigo, la función del perito es dar a conocer la verdad, derivada de su conocimiento especializado". *Rivera et al. v. Arcos Dorados et al.*, *supra*, pág. 207 citando a *San Lorenzo Trad., Inc. v. Hernández*, *supra*, págs. 709-710.

De esta manera, las Reglas de Procedimiento Civil regulan cómo utilizar y llevar a cabo el descubrimiento de prueba pericial. Véanse Reglas 23.1 y 37 de Procedimiento Civil, *supra*. A saber, las partes podrán requerir la información de los peritos consultores o aquellos a los que se pretenda presentar en el juicio. Véase *S.L.G. Font Bardón v. Mini-Warehouse*, *supra*, págs. 338-342. Al ser parte del descubrimiento de prueba, la prueba pericial está sujeta a ser excluida como sanción cuando así lo determine el adjudicador. Ante un dictamen a esos efectos, la parte afectada podrá recurrir al TA, mediante un recurso de *certiorari*, y solicitar la revisión de toda orden o resolución interlocutoria sobre la admisibilidad de peritos esenciales. Véase Regla 52.1 de Procedimiento Civil, *supra*.

En *Rivera et al. v. Arcos Dorados et al.*, *supra*, tuvimos la oportunidad de atender un caso en el que el tribunal de instancia excluyó prueba pericial durante el descubrimiento de prueba y el TA no intervino ante la impugnación de este dictamen. A saber, atendimos una demanda sobre daños y

perjuicios en el cual, desde la conferencia inicial, la parte demandante informó al TPI que contrataría a un perito para evaluar los daños y presentar un informe pericial. Sin embargo, tras varias incidencias procesales, notificó que continuaría litigando el caso sin el perito previamente anunciado. Este fue el caso hasta que, pasado poco más de un año, indicó al tribunal que sí se proponía presentar prueba pericial, pero el TPI no la permitió por tardía.

Inconforme, los afectados argumentaron ante esta Curia que el TPI había errado al denegar la presentación de prueba pericial cuando la etapa del descubrimiento de prueba aún no había concluido. Ante ello, este Tribunal sopesó la flexibilidad que conlleva el procedimiento de descubrimiento de prueba versus la discreción judicial de los tribunales, y revocamos al foro primario. Expresamos que, **en el contexto particular de los sucesos procesales de ese caso**, "la medida severa de excluir del juicio el testimonio de un perito esencial es análoga a la medida extrema de desestimación", pues el derecho a presentar prueba a favor de una reclamación es un pilar importante del debido proceso de ley. Íd., pág. 215.

### III

En el recurso de epígrafe, los peticionarios recurren la *Sentencia* del TA mediante la cual se revocó la exclusión de la prueba pericial presentada por la AEE. A juicio del foro apelativo intermedio, la sanción impuesta por el tribunal de instancia fue desproporcionada ya que conforme a

lo establecido en *Rivera et al. v. Arcos Dorados et al.*, *supra*, eliminar o excluir del juicio un perito esencial es análogo a la medida extrema de desestimación, y en este caso: (1) la sanción se produjo sin apercibimiento previo y sin mediar incumplimientos reiterados atribuibles a la AEE; (2) el proceso de descubrimiento seguía en curso; y (3) no existía un perjuicio real ni insubsanable a las otras partes.

No obstante, los peticionarios sostienen que el TA se distanció del tracto procesal que tuvo ante sí para arribar a esta conclusión porque la prueba pericial fue producida posterior al vencimiento del término concedido a esos fines, sin que mediara solicitud de prórroga o justa causa para la dilación. A su vez, arguye que el dictamen del TA fue contrario a derecho pues aplicó lo resuelto en *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc.*, *supra*, de forma automatizada, sin considerar las circunstancias particulares del caso y adjudicando *motu proprio* la esencialidad de la evidencia excluida.

Como punto de partida, debemos dirimir si el TPI abusó de su discreción al excluir el informe preparado por el perito de la AEE. Conforme el trasfondo fáctico esbozado, a pesar de que el foro de instancia ya había atendido el asunto de la evidencia pericial, la AEE anunció que contrataría los servicios de un ingeniero con el fin de emitir un informe pericial **en o antes del 30 de mayo de 2025**, sin explicar por qué era esencial para su defensa. Ante esta solicitud, ninguna de las partes del pleito se opuso y el TPI ejerció

su discreción para extender el descubrimiento de prueba y permitir que la AEE presentara su evidencia. No obstante, esta **notificó el informe dieciocho días después** de la fecha que solicitó.

Las partes objetaron oportunamente y solicitaron su exclusión porque **la AEE preparó y notificó el informe después de vencido el término para ello, sin que mediara solicitud de prórroga y sin evidenciar justa causa para ello**. Además, arguyeron que con alrededor de dos meses para que culminara el descubrimiento de prueba agendado, la presentación tardía de la prueba pericial los colocaba en desventaja por no contar con el tiempo suficiente para identificar peritos de refutación ni coordinar o ejecutar los trámites pertinentes. Así, **el TPI volvió a ejercer su discreción y concedió tres días a la AEE para que se expresara al respecto**. Sin embargo, **una vez más, la AEE no compareció dentro del término otorgado**. Ya vencido el término de los tres días, la AEE solicitó una prórroga para oponerse, que fue denegada por el TPI. Aun así, la AEE hizo caso omiso al dictamen del foro de instancia y presentó su escrito en oposición en destiempo.

En resumen, la AEE incumplió reiteradamente con las órdenes del TPI a los efectos de: (1) notificar su informe pericial casi tres semanas después del término establecido, sin solicitar prórroga para ello ni evidenciar justa causa por su incumplimiento; (2) no oponerse a la exclusión del informe dentro del término concedido; y (3) presentar su escrito en oposición después de que el TPI denegara la

solicitud de prórroga para hacerlo. **Es decir, en lo pertinente al informe pericial en cuestión, la AEE no justificó su esencialidad, ni respetó los términos concedidos por el tribunal de instancia, compareciendo tardíamente y asumiendo una postura de indiferencia ante las órdenes del TPI.**

Si bien es cierto que el descubrimiento de prueba debe ser uno amplio y liberal, no es menos cierto que con vistas a promover la solución justa, rápida y económica de las disputas, los tribunales de instancia tienen amplia discreción para regularlo mediante los mecanismos otorgados por nuestro ordenamiento procesal civil. De este modo, la potestad que poseen los foros primarios para manejar los casos celebrados ante sí tiene que estar avalada por el estado de derecho aplicable y la razonabilidad de la sana discreción judicial. De así serlo, ameritará deferencia por los tribunales apelativos.

En el caso ante nuestra consideración, es evidente que el TPI ejerció su discreción de una manera razonable que no merecía la intervención del foro apelativo intermedio, ya que utilizó los mecanismos provistos por las Reglas de Procedimiento Civil para asegurar que el descubrimiento de prueba fuese realizado con la diligencia que el proceso amerita. De esta manera, el TPI emitió varias órdenes durante el proceso en las cuales indicó que no otorgaría prórrogas adicionales y apercibió a las partes que el incumplimiento de lo establecido podría acarrear sanciones. Por tanto,

cuando la AEE presentó su informe pericial tardíamente y no compareció en el periodo otorgado para oponerse a su exclusión, el TPI estaba en toda su discreción para evaluar si el incumplimiento de los términos justificaba la imposición de sanciones como, por ejemplo, la exclusión de evidencia. Véase Regla 34.3(b)(2) de Procedimiento Civil, *supra*. Por lo tanto, **justipreciamos que el tribunal de instancia actuó dentro del marco de la sana discreción judicial, al no sopesar livianamente la conducta de indiferencia de la AEE y excluir el informe pericial en cuestión, sobre el cual no se expresó su esencialidad.**

Por otra parte, es necesario que nos apartemos del criterio esbozado por el foro apelativo intermedio para aplicar *Rivera et al. v. Arcos Dorados et al.*, *supra*, e intervenir en este asunto. A saber, la intervención del TA estuvo basada en que, conforme a la jurisprudencia precitada, la exclusión del informe pericial "privó a la AEE de presentar un elemento central de su defensa, lo que constituy[ó] un claro abuso de discreción y una violación al debido proceso de ley".[12] No obstante, en cuanto a este particular, la parte peticionaria indica inequívocamente que la prueba pericial en cuestión no es esencial, y por tanto, su exclusión no equivale a la desestimación. En concreto, señala que el TA abusó de su discreción al decretar la esencialidad del perito excluido, sin que ello formara parte de los señalamientos de error en el recurso ante sí y sin

---

[12] Véase pág. 19 de la Sentencia del TA.

que la AEE acreditara que esta, en efecto, era esencial para su defensa. Por consiguiente, estamos llamados a distinguir el trasfondo fáctico que dio lugar al dictamen de *Rivera et al. v. Arcos Dorados et al.*, *supra*, de los hechos que tenemos ante nuestra consideración.

Cónsono con el derecho aplicable que antecede, *Rivera et al. v. Arcos Dorados et al.*, *supra*, es un caso que tiene ciertas semejanzas con el caso de epígrafe. En específico, ambos surgen por demandas sobre daños y perjuicios y, durante el proceso de descubrimiento de prueba, el TPI decidió excluir la evidencia pericial de una de las partes. Sin embargo, es ahí donde culmina la similitud entre estos dos casos, ya que existen distinciones evidentes que tenemos que considerar.

Como punto de partida, es menester que distingamos la posición en la que se encontraban las partes cuya prueba pericial fue excluida en sus respectivos casos. Por un lado, tenemos a la AEE en el caso de epígrafe, quien, **en calidad de codemandada**, presentó un informe pericial que posteriormente fue excluido por el foro primario. Del otro lado, en *Rivera et al. v. Arcos Dorados et al.*, *supra*, fue **a la parte demandante** quien le fue denegada su solicitud para materializar la prueba pericial que utilizaría para probar su causa de acción. En aquella ocasión, nuestro dictamen a los efectos de que la medida de excluir un perito esencial era análoga a una desestimación surgió en el contexto de que "el derecho a presentar prueba <u>a favor de una reclamación</u> constituye un pilar importante del debido proceso de ley".

Íd., pág. 215. Es decir, en *Rivera et al. v. Arcos Dorados et al.*, *supra*, resolvimos que, como el peso de la prueba residía en la parte demandante, la exclusión de evidencia pericial esencial para probar sus alegaciones constituiría una desestimación *de facto* del pleito instado.[13] Por el contrario, **este razonamiento es incompatible en el caso de una parte que es demandada, cuya facultad para presentar prueba es optativa por carecer de reclamación alguna que probar, y más aún cuando no existe evidencia pericial que refutar.**

Segundo y no menos importante, es necesario destacar la postura asumida por las partes cuya prueba pericial fue excluida. A saber, en *Rivera et al. v. Arcos Dorados et al.*, *supra*, la parte demandante informó desde la conferencia inicial que contrataría a un perito para evaluar los daños y presentar un informe pericial con el fin de fortalecer su reclamación. Por su parte, en el caso de epígrafe, la AEE condicionó la contratación de un perito desde que comenzó el descubrimiento de prueba a la determinación de la parte demandante y en ningún momento justificó que era esencial para su defensa.

Según obra en el expediente, tras la celebración de la conferencia inicial, el TPI concedió un término a cada parte para informar si iban a emplear peritos que fortalecieran

---

[13] Véase además *Valentín v. Mun. de Añasco*, *supra*, en donde la parte perjudicada por la exclusión del testigo también fue la parte demandante, quien necesitaba esa evidencia para sostener su reclamación en los méritos.

sus teorías del caso. Al presentar el calendario de descubrimiento de prueba, establecieron las fechas en las cuales, de contratar un perito, notificarían sus respectivos informes periciales. Transcurrido el término para que el matrimonio Ramos Claudio presentara su informe, y sin que este lo hiciera, la AEE informó al TPI que aún no estaba en posición de determinar si utilizaría a un perito. Es decir, **la AEE indicó que la necesidad de utilizar prueba pericial era contingente a las acciones realizadas por la parte demandante.** De este modo y vencido el término para que notificara su propio informe, la AEE le informó al TPI que no lo presentaría porque los demandantes no habían contratado un perito para probar sus alegaciones. En otras palabras, **la AEE reiteró que la presentación de prueba pericial en el caso de epígrafe dependía enteramente de si el matrimonio Ramos Claudio la utilizaba o no.**

Así las cosas, la determinación del TA en cuanto a la esencialidad del informe pericial presentado por la AEE es insostenible, y concluir que su exclusión es análoga a la desestimación es incorrecto. De entrada, cabe señalar que la Regla 52.1 de Procedimiento Civil, *supra*, expresamente autoriza la revisión de determinaciones interlocutorias sobre la admisibilidad de "peritos esenciales". Sin embargo, este no fue el señalamiento de error que tuvo el TA ante sí. Para que algo sea "esencial", tiene que ser indispensablemente necesario, un requisito o importante al más alto grado. Véase *Black's Law Dictionary*, *op. cit.*, pág. 686. (Traducción nuestra). En este caso, la AEE nunca

acreditó la esencialidad de su perito y fue consistente en condicionar su contratación a la determinación que en su momento realizaran los demandantes. Por lo tanto, **justipreciamos que el foro apelativo intermedio se extralimitó al apartarse del tracto procesal que obra en el expediente para adjudicar que el informe pericial presentado por la AEE era un "elemento central de su defensa", y por consiguiente, resolver que su eliminación es análoga a la medida extrema de desestimación.**

A su vez, es importante puntualizar que la determinación de excluir la prueba pericial presentada por la AEE no constituyó una actuación con prejuicio o parcialidad, un craso abuso de discreción, ni una aplicación errónea de derecho por el TPI. Al contrario, fue el TA quien se extralimitó al interferir con la discreción judicial ejercida razonablemente por el foro de instancia y al aplicar la norma establecida en *Rivera et al. v. Arcos Dorados et al.*, de manera automática, adjudicando *motu proprio* la esencialidad de la prueba excluida. En el precitado caso no establecimos una regla general de que toda exclusión de prueba pericial es análoga a la desestimación, sino que más bien, resolvimos que ante determinadas circunstancias ese pudiese ser el resultado. En el caso de autos, fue la propia AEE quien, en calidad de codemandada, condicionó el uso de prueba pericial a la determinación que en su momento hicieran los demandantes. Además, fue la AEE quien no justificó la esencialidad del informe excluido, incumplió reiteradamente con los términos concedidos por el TPI sin solicitar prórroga

ni evidenciar justa causa. Ante ello, es forzoso concluir que el TA erró.

## IV

Por los fundamentos antes expuestos, se revoca la *Sentencia* emitida por el TA y se devuelve el caso al TPI para que continúe los procedimientos conforme a los pronunciamientos esbozados en la *Opinión* que antecede.

Se dictará Sentencia en conformidad.


Raúl A. Candelario López
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Luis Miguel Ramos Martínez y otros<br><br>Recurridos<br><br>v.<br><br>Liberty de Puerto Rico y otros<br><br>Peticionarios | CC-2025-0720 |  |

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de agosto de 2026.

Por los fundamentos expuestos en la *Opinión* que antecede, la cual se hace formar parte de la presente Sentencia, se revoca el dictamen emitido por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos conforme a los pronunciamientos esbozados.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo